## J. E. LADD v. THE STATE.

No. 13084.   Delivered May 7, 1930.
Reported in 27 S. W. (2d) 1098.

The opinion states the case.

*A. B. Crane,* of Raymondville, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for negligent homicide in the second degree; punishment, a fine of one thousand dollars.

The testimony for the State shows that appellant was driving his car west upon a concrete highway; that he met a one-horse buggy occupied by two witnesses who testified in the case. The man driving this buggy said that appellant was coming "very fast," and that witness turned his buggy off the concrete to keep from being killed; that just as he turned to his right appellant's car appeared to turn to its left. This witness and his wife testified that the boy who was killed was riding on a bicycle just behind their buggy. There is no suggestion from either of said witnesses that the boy in question turned to his left and from behind their buggy at the time of or just before he was struck by appellant's car. The step-father of said boy testified that he heard the car of appellant roaring as it came west on the highway, and heard the sound as of something struck and ran around his house and found the little boy by the side of the road. The testimony showed that the child's leg was broken and that his skull was crushed as the result of the collision. Another State witness who owned a car of the same make as that of appellant, and had had it about a year, testified that his car would begin roaring at a speed of about forty-five miles per hour. Appellant and his witnesses testified that he was driving along said highway going west and at about thirty-five miles an hour, and as he met the buggy above referred to, he slowed down to about thirty miles per hour, and that the boy upon a bicycle came suddenly out from behind the buggy, and it was impossible for appellant to prevent the collision. Appellant bought his car new and had it about six months.

There are six bills of exception in the record. Bills 1 and 4 complain of the refusal of the court to let witnesses, who were in the car with appellant, answer the question as to whether they could see any way by which defendant could have prevented hitting said boy with his car. We perceive no error in the action of the trial court. The question called for a speculative answer, and invaded the province of the jury.

Bill of exception No. 2 sets out a number of matters testified to by a witness, some of which are unquestionably admissible. If there be any question as to the admissibility of the testimony given by this witness which is not admitted as to the fact that the brains

of the boy were knocked out and were lying on the ground, this could not be considered as brought forward in this bill by reason of the fact that the complaint is of all the testimony set out in the bill as a whole. The rule is so well settled as not to need citation of authorities, that when part of the matters complained of are admissible and others are not, a bill complaining of the whole will not avail.

There is a bill complaining of the fact that the doctor, to whom the child was carried after being struck, was permitted to testify as to the condition of the boy's body when he examined it. It is not clear to us that testimony as to the mangled and bruised condition of the boy's body was not admissible for what it was worth as tending to show the rate of speed at which appellant's car was going at the time of the collision. Manifestly such testimony could shed light upon such issue.

Bill of exception No. 5 complains of the testimony of Mr. Rains who says that he met appellant about three quarters of a mile from the scene of the accident, and that appellant was going at that time about forty-five miles an hour. The witness further testified that he became frightened because of the excessive speed of appellant's car and drove his own truck off the concrete and permitted appellant to pass without harming witness. The rate of speed appellant was going according to said witness, if kept up, would have brought him to the scene of the collision just a minute later. We think what occurred there was res gestae and was illustrative also of the speed at which appellant was operating his car. There is no separate objection to the testimony of this witness as to the fact that he was frightened and drove his own car off the concrete so as to permit appellant to pass without harming witness. Upon another trial this witness might testify that he saw appellant coming, give his opinion as to the rate of speed he was going, and that witness drove his car off the concrete, but it is questionable whether he might testify to the fact that he was frightened because of the speed of appellant's car.

The remaining bill of exception sets up that after the witness McDougald had testified that he owned a model A Ford car twelve months old, which begun to roar at about forty-five miles an hour, he was asked by the State if he could tell at what speed a model A Ford car begins to roar. The bill sets up the objections made by appellant to the answer of this witness, but neither sets out the action of the court, if any, upon the objections made, nor does it state

what answer was made by the witness. The bill clearly manifests no error. Testimony of witnesses as to the rate of speed at which model A Ford cars would begin to roar, would be receivable from witnesses who might have knowledge of such proposition. Testimony upon this point from a witness who knew nothing further than based on his own experience with one car, might be of doubtful admissibility.

In his charge to the jury the court below instructed them as follows:

"You are further instructed that under the provisions of the statute of this State, no person operating or driving a motor or other vehicle upon the public highways shall pass any motor or other vehicle, person or thing on any public highway of this State at such rate of speed as to endanger the life or limb of any person or the safety of any property."

This was excepted to. Evidently the learned trial judge was giving to the jury the substance of Art. 790, P. C. Said article is clearly unconstitutional. It provides no standard by which the operator of any motor vehicle could determine whether the rate of speed at which he was operating his car, was lawful or otherwise. The test of danger to the life or limb of any person, or safety of any property, is not one which can be made apparent to the operator of the vehicle by the mere question of possible danger to persons or property. One may be in danger of running over a hog or a chicken, or other animal, or of injuring property of kinds that might be stated, while running well within the speed limit allowed by our State law. We can not appraise the injurious effect from the giving of this charge.

Appellant asked a number of charges, and argues at length both the failure of the court to give same, and the applicability of same to the testimony, also the lack of testimony,—the basis of said charges and the complaint of the insufficiency of the testimony being that there was no apparent danger of inflicting death by the operation of the car. Art. 1232, P. C. provides that to constitute negligent homicide there must be an apparent danger of causing the death of the person killed or some other. The jury were not compelled to accept the testimony of appellant and those in his car to the effect that the child drove suddenly out in front of them at the time of the collision. They may have believed that the turning of the buggy met by appellant took same away from in front of the child and that the collision was caused by the speed at which appellant's

car was being operated. Our statute fixed a maximum speed for motor cars at 35 miles per hour at the time of this occurrence. This court will not hold that one who operates a motor vehicle upon the public roads of this State at a rapid rate of speed per hour, and especially when meeting other vehicles, is not doing an act which is accompanied by apparent danger of causing death. The act of appellant was such as to cause the occupants of said buggy, and of the truck which he met three quarters of a mile away, to turn from the concrete to the side of the road for safety. The operation of a car where other people are upon a highway, at such rate of speed might be deemed by a jury an act which involves apparent danger. We must decline to hold that such a conclusion would be wrong, as a matter of law.

For the error in giving the charge above mentioned, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*